Anderson *v.* Reading Co., Appellant.

Argued November 27, 1931.   Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*William Clarke Mason,* for appellant.—The evidence of the plaintiff was not sufficient to prove facts upon which a finding of negligence could be based: Manning v. R. R., 296 Pa. 380; Dangelo v. R. R., 301 Pa. 579;

Chicago, etc., Ry. v. Coogan, 271 U. S. 472; Northern Ry. v. Page, 274 U. S. 65; Western Atl. R. R. v. Henderson, 279 U. S. 642.

The plaintiff failed to prove the cause of action alleged in the statement of claim: Kosson v. Power Co., 293 Pa. 131; Stewart v. DeNoon, 220 Pa. 154.

*Edwin A. J. Blank*, for appellee.—The case was for the jury: First Nat. Bank v. Ins. Co., 274 Pa. 129; Anderson v. Reading Co., 14 Pa. D. & C. 320; Hildebrand v. Director General, etc., 270 Pa. 86, 90; Grier v. Sampson, 27 Pa. 183; Grogan v. R. R., 213 Pa. 340; McManamon v. Twp., 232 Pa. 439; Tucker v. Ry., 227 Pa. 66.

OPINION BY MR. JUSTICE WALLING, January 5, 1932:

At the place in Philadelphia, here in question, the defendant Reading Company's system of tracks, extending in a general easterly and westerly direction, passes through a cut some twenty-five feet deep, while Somerset Street crosses the tracks by an overhead bridge, practically at right angles and intersects and crosses Gurney Street. The latter extends along parallel with and adjacent to the railroad right-of-way and on the southerly side thereof. The bed of both streets is thus approximately twenty-five feet higher than the railroad tracks; the bank extends down to the latter from Gurney Street by a gradual slope, referred to in the evidence for plaintiff as a twenty-five per cent grade. About 10:30 on the evening of February 14, 1925, William Anderson, plaintiff's former husband, was found lying south of the railroad tracks under the Somerset Street bridge, with the top of his head so crushed that he died in a few hours. This action, brought to recover damages therefor, resulted in a verdict and judgment for plaintiff and the defendant has appealed.

The judgment cannot be sustained. A board fence extended along the walk on Gurney Street for some distance from the southwest corner of the Somerset Street

bridge and ended about eight feet from a telephone pole, thus leaving an open space near the top of the bank, through which plaintiff contends the deceased passed and fell down the bank. So far as appears no one saw the accident and the record is barren of any proof, direct or circumstantial, that he passed through this space or fell down the bank, and failure to guard this bank by a barrier is the only negligence averred. The ground was level for a short space outside of the walk and then the decline down the bank began gradually, with no sudden drop. True, it was in the night, but there was an arc light within fifty feet and sufficient light so that plaintiff's witness, Thompson, could distinguish men from women and old people from young at a distance of from thirty to fifty feet. Hence, it is idle to urge that the deceased, a young man, could not see the walk at his feet, or the pole and fence by his side. The witness Thompson says, as he was passing easterly along this walk on Gurney Street there were four people in front of him, an elderly couple and a man and a girl, and when he looked again the man had disappeared. He makes no attempt to identify him as the one he later found under the bridge. So far as appears, the man he first saw may have crossed Gurney Street or gone elsewhere. The alleged exclamation of the girl, "My God, a man just fell down," if admissible as res gesta, proves nothing as to the identity of the man or where he fell.

There was a path, leading down the bank from near the telephone pole, used in going to and coming from the tracks, and if the accident resulted from falling down the bank it is more probable that the deceased, a resident of the locality, accidentally fell, while passing down the path for some purpose of his own, than that he lost his way. The bank was not so slippery but that the deceased was later that night carried up there on a stretcher.

Another obstacle to the theory that the accident was caused by lack of a guard rail, is that a few feet down

the bank from the open space between the fence and telephone pole there is a retaining wall extending out from the bridge which would have stopped the deceased in his alleged fall down the bank. It was argued at bar that his head may have been crushed by contact with this retaining wall. This is disproved by the fact that, while scalp wounds are known to bleed profusely, no blood was found on the wall just mentioned, or between there and where the body was found.

While the bank was wet and slippery it is scarcely conceivable that the accident resulted from a slide or fall there. No rock, wall, abutment, or other solid object, against which the head of the deceased could have come in contact so as to crush the skull by a slide or fall was there. That the injury was inflicted where the body was found is indicated by the fact that no blood was found elsewhere and no trail or trace of blood led to the body. The crushed head of the deceased rested in mud, gravel and a pool of blood, in line with the west side of the bridge twenty-five feet above, and, in the writer's opinion, the injury was caused by a fall head first therefrom. This would account for the crushed top of his head and other conditions found there as no other theory seems to do. That he was hurt where found also appears from the fact that his injuries were such as to prevent any voluntary change of place by him. That he must have fallen a substantial distance to so crush his head by contact with the mud and gravel is also apparent. It does not necessarily imply that the deceased voluntarily threw himself from the bridge; he may have become dizzy and lost his balance while leaning over the rail.

If injured while going down the bank, it is at least as probable that the deceased fell while voluntarily passing down the path as that he accidentally left the walk because of the absence of a guard rail. More probable than either is the theory that he fell from the bridge. This being the state of the record there can be no recovery.

250

The only negligence charged is the absence of the guard rail or barrier, and it being at least equally probable that the accident resulted from some other cause, plaintiff has not met the necessary burden of proof. "Where a defendant is liable for only one of two or more equally probable causes and to say which is a mere guess, there can be no recovery": Dangelo et al. v. P. R. R. Co., 301 Pa. 579; authorities there cited need not be repeated here. See also Manning v. B. & O. R. R. Co., 296 Pa. 380; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658. True, a case may be established by circumstantial evidence, but here the circumstances are at least equally consistent with theories which absolve the defendant from liability.

The judgment is reversed and is here entered for the defendant non obstante veredicto.

This opinion was written by Justice WALLING; it is now adopted by and filed as the opinion of the court.

PER CURIAM,

BY ROBERT S. FRAZER, C. J.