# Fix, Appellant, *v.* Pennsylvania Power & Light Company.

Argued January 25, 1943. Before MAXEY, C. J.; DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

*Robert Grey Bushong,* with him *George B. Balmer,* for appellant.

*Allan K. Grim,* with him *Stevens & Lee* and *George T. Hambright,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 22, 1943:

This was an action of trespass to recover damages for alleged wrongful death.

William Fix, the deceased, met his death by electrocution while employed as an electrician by the contractor for the newly constructed United States Postoffice building in the Borough of Wyomissing. During the

period of construction electricity was supplied over a system of temporary wires which entered the basement of the building through a door in the north wall, ran along the north wall a distance of 17 feet to lugs at the top of a switch box affixed to the north wall near the northwest corner of the basement, and from these lugs extended upward to the various rooms in which current was needed. On November 13, 1940, when the building was almost completed, employees of Pennsylvania Power and Light Company were on hand to make connection between the company's power line and the permanent wiring system, consisting of three service wires extending from the top of a pole erected on the post-office property, through a conduit alongside the pole to the ground, and through the ground to the basement wall. Entering the basement through the west wall, at the northwest corner, the permanent wires ran along the north wall a distance of $8\frac{1}{4}$ inches, through a meter box attached to the north wall, and from the meter box to lugs at the bottom of the switch box to which the temporary wires were connected in the manner described. The meter box was 10 inches in width and there was a space measuring $6\frac{1}{2}$ inches between its right side and the left side of the switch box.

Upon arrival the Electric Company employees were advised that a government inspector had ordered a change in the vertical location of the meter box and were told not to make connection until after this change had been completed. The change involved removing the conduit extending from the west wall to the meter box and also the conduit between the meter box and switch box. Fix, the deceased, was engaged in making the necessary adjustments, standing on the wet cement floor of the basement between the meter box and switch box, when he was instantly killed by a current of electricity entering his body through the palm of his left hand. The conduit leading from the west wall to the meter box had already been disconnected at the time and there was no current in the meter box; there was, however, live cur-

rent in the switch box, supplied by the temporary wiring.

On the theory that Fix's death was brought about as the result of negligence on the part of the Electric Company's employees in prematurely making the connection between its service line and the permanent wiring system of the postoffice building, in spite of notice that the connection should not be made until the location of the meter box had been changed, Fix's widow instituted this action for wrongful death, in her own right and as trustee ad litem for her children and New Amsterdam Casualty Company, a workmen's compensation payer. At the conclusion of the evidence on liability the Electric Company moved for a compulsory nonsuit which was granted. Mrs. Fix obtained a rule to show cause why the judgment of nonsuit should not be set aside which was discharged, after argument thereon, and she then took this appeal.

In order to take the case to the jury on the issue of negligence, as charged, the burden rested with appellant to establish not merely that Fix died as a result of electric shock, but in addition that the fatal shock was received by his coming into contact with the permanent wires protruding from the west wall: *Clark v. Penna. P. & L. Co.*, 336 Pa. 75. This she obviously failed to do. On the contrary, the evidence adduced, in attempting to sustain this burden, would appear to support the theory of appellee, that death resulted from contact with the temporary system over which it had no control. One White, who was in the basement at the time of the accident, testified that Fix had been working on both the meter box and switch box; that he saw a spark just as Fix fell and could not state its location, but that he had the idea Fix was then working with his hands in the switch box; that Fix drew his hands back on the level of his head; and that the conception he got was that the switch box door was standing straight out. Hedin, the contractor and only other witness as to how the accident happened, testified that he had been standing with Fix between the meter box and switch box;

that Fix was working on the connection between the meter box and switch box; and that he "was not in the meter box or switch box." The witness admitted, however, that the door to the switch box was partially open; admitted he had turned away at the time of the accident and was walking to the other side of the basement; and admitted that he did not see the position of Fix's hands at the time he was killed.

At most the evidence establishes merely that Fix came to his death by electricity while working about appliances in which there were two sets of wires, one of which was under the control of appellee and the other of which was not. Death may have resulted by contact with the former, as so ably argued on behalf of appellant, but under the evidence adduced it is at least equally plausible that the fatal current came from the latter; hence a finding one way or the other would necessarily be based on speculation and conjecture, rather than on proof of negligence, and could not be sustained. "Where a defendant is liable for only one of two or more equally probable causes and to say which is a mere guess, there can be no recovery": *Anderson v. Reading Co.*, 306 Pa. 246, 250. See also *Houston v. Rep. Ath. Assn.*, 343 Pa. 218, 221; *Martin v. Marateck*, 345 Pa. 103, 106.

The facts of this case render the doctrine of res ipsa loquitur inapplicable. As said in *Norris v. Phila. Electric Co.*, 334 Pa. 161, 163, 165: "For a plaintiff to successfully invoke the doctrine, not only must his own case be free from the inference that a source not within defendant's control could have produced the harm (*Rocap v. Bell Telephone Co.*, 230 Pa. 597), but he must also affirmatively eliminate all likely causes of the injury which are within his peculiar knowledge . . . If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn." See also *Zahniser v. Penna. Torpedo Co.*, 190 Pa. 350, 353; *Clark v. Penna. P. & L. Co.*, supra, 80.

Judgment affirmed.