422 A.2d 989 (1980)
Douglas M. RUSSELL et al., Appellants,
v.
G. A. F. CORPORATION, and Stanley Gleit, Individually, John Olenek, Individually and t/a Gleit, Olenek and Associates, Engineers, Appellees.
No. 79-186.
District of Columbia Court of Appeals.
Argued February 26, 1980.
Decided October 15, 1980.
*990 Aaron M. Levine, Washington, D. C., with whom James E. Turner, Washington, D. C., was on the brief, for appellants. Eric M. May, Washington, D. C., entered an appearance for appellants.
Laurence T. Scott, Washington, D. C., for appellee G.A.F. Corp.
George C. Courtot, Jr., Washington, D. C., entered an appearance for appellees Stanley Gleit and John Olenek.
Before GALLAGHER, MACK and FERREN, Associate Judges.
PER CURIAM:
Appellants Douglas M. Russell, a carpenter who fell and broke his leg when a sheet of corrugated asbestos cement shattered during installation, and his wife, Wanda Russell, sued the manufacturer of the material (G.A.F.) and the engineers of the project (Gleit and Olenek) for damages resulting from their failure to warn that the material should not be stepped on. At the close of plaintiff's evidence, the trial court granted defendants' motions for a direct verdict. We reverse.

I
In essence, appellants (hereafter "appellant," referring to Douglas M. Russell) contend the material looked safe but was not; therefore, a warning was needed. According to appellant, the engineers who designed the project had a duty to place a warning on the plans they sent to the construction site, and the manufacturer had a duty to label each sheet "no step."
The accident occurred as appellant stepped down three or four feet from one level of an interior ceiling being installed in the Lincoln Memorial to a lower portion of the ceiling, onto a sheet of the corrugated asbestos that was lying across steel I-beams. Appellant testified that the asbestos-cement sheets, approximately 4 by 8 feet, 3/8 inch thick, and weighing well over 100 pounds, appeared to be safe to walk on. He also described a simple test performed at the construction site in which the construction foreman directed that a sheet be placed across steel I-beams, and had various workers, including appellant, walk on it. It held their weight. A co-worker testified that he regularly walked on the sheets as he installed them in the ceiling.
Appellee G.A.F. (the manufacturer) published a booklet to be distributed with the material stating that planks or chicken ladders (grids which distribute stress) should be used in all roofing work. The booklet was placed in each bundle of sheets as it left the manufacturer for shipment to a distributor. The distributor in this case testified that he handled the sheets with care, and that in normal practice the informational booklet would go along with the material that he sold. The sheets here were brought by Curtin & Johnson, the building contractor and appellant's employer.
In a deposition, a G.A.F. salesman stated that several persons at G.A.F. were aware that the corrugated asbestos cement commonly was used in the field for roofing without the recommended planks or chicken ladders. He and the distributor were aware of other types of building materials, used in roofing, which were individually labelled "no step" or the like.
Appellant presented a safety expert, who had reviewed the manufacturer's information on the material and the drawings and specifications of the project. In response to a long hypothetical question, the expert stated that in his opinion, the manufacturer did not comport with safe practices and procedures. He said a warning was needed because the material was very brittle, and if there were a small crack or flaw in it, or *991 if it got wet, its strength would be seriously affected, although the change would not be obvious. He further stated that a warning given through a pamphlet stuck in a pile of sheets was insufficient because it could easily be lost at the construction site; thus, safe practice required a warning on each panel.
With respect to appellees Gleit and Olenek, who designed the project, the expert pointed out a national building code (BOCA) section which says the architect has a responsibility to identify in his drawings all specified prefabricated materials and their physical properties. He opined that the project designers should have transferred all information in the manufacturer's instructions about the treatment and installation of the material to the drawings or to the project specifications. Appellee Gleit testified he was familiar with the brochure's caution that planks or chicken ladders should be used on roofing work, but he did not communicate the warning to anyone else because he did not think he was the one responsible for warning the workers.

II
A. Appellant labelled his complaint against the design engineers as a negligence claim, and against G.A.F. as a claim based on both negligence and strict liability in tort. A plaintiff may limit the claim to negligence in failing to warn about foreseeable harm from a product, see Burch v. Amsterdam Corporation, D.C.App., 366 A.2d 1079, 1086 (1976), or claim strict liability for injury derived from the same failure. See Restatement (Second) of Torts § 402A, Comment j (1965). In either case, however, the duty is the same: ordinary care. See Basko v. Sterling Drug, Inc., 416 F.2d 417, 426 (2d Cir. 1969) (Restatement, supra § 402A, Comment k, adopting the ordinary negligence standard of duty to warn). More specifically, whether a manufacturer can be held strictly liable for failure to warn, or held liable only for negligence, the threshold question whether there has been a "failure to warn" (triggering potential liability) is judged by the following standard of care:
The seller or manufacturer of a product whose use could result in foreseeable harm has a duty to give a warning which adequately advises the user of attendant risks and which provides specific directions for safe use. [Burch v. Amsterdam Corp., supra at 1086 (emphasis in original).] [[*]]
The trial court did not follow this standard but mistakenly added an element of "defectiveness" to the Burch test. One of the grounds for granting the directed verdict was the absence of evidence that the sheet was defective when it left G.A. F.'s hands. Of course, there must be a danger to warn about. See Beier v. International Harvester Co., 287 Minn. 400, 402, 178 N.W.2d 618, 620 (1970) (insufficient evidence to show danger of which defendant had a duty to warn in that it was impossible for bolts to become loose while outer nuts were tight). Evidence of a defect is unnecessary, however. A product can be perfectly made and still require directions or warnings on proper use in order to be safe. See Biller v. Allis Chalmers Manufacturing Co., 34 Ill.App.2d 47, 180 N.E.2d 46 (1962) (manufacturer owed duty to warn of latent limitations of even a perfectly made tractor).
B. In deciding whether a directed verdict was properly granted here, we must view the evidence in its aspect most favorable to the appellant, granting appellant all reasonable inferences. Corley v. B P Oil Corp., D.C.App., 402 A.2d 1258, 1263 (1979); St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp., D.C. App., 350 A.2d 751, 752 (1976); Gaither v. District of Columbia, D.C.App., 333 A.2d 57, 59 (1975).
*992 We conclude the evidence here was sufficient to support an inference that G.A.F. knew or should have known of a danger sufficiently serious to require a warning. The safety expert testified that the material could be dangerous when used in roofing work without planks or chicken ladders because the sheets were brittle and would not support a person's weight if a hairline crack developed. The material also would be weakened if wet. Even if a sheet were in perfect condition, the expert concluded (using the manufacturer's own data) that a sheet would support only 365 pounds. If a potential construction worker weighed 240 pounds, the resulting safety factor would be only 1.5, whereas accepted practice required a safety factor of 4.
In addition to the existence of a danger which creates a duty to warn, however, plaintiff must show that the manufacturer actually failed to warn. The trial court concluded that the warning G.A.F. gave through its brochure was sufficient as a matter of law. We disagree and find that the adequacy of the warning was put in issue by appellant's evidence. See Burch v. Amsterdam Corp., supra, at 1086-87 (sufficiency of a particular warning is ordinarily a jury question).
The question here is whether a warning is adequate when it is conveyed by a manufacturer to a middleman, but fails to reach the person at risk. The Restatement (Second) of Torts § 388, Comment n (1965) contains a helpful framework for the analysis of this question.
Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it. [Id. at 308]
The Restatement suggests a balancing of four factors to determine if the warning given to the middleman is reasonably certain to reach those in the field: (1) the risk of injury; (2) the seriousness of harm which might result; (3) the practicability and expense of placing a warning directly on the product; and (4) the reliability of the middleman as a conduit of the warning. Id.
We have already stated that the danger of an injury was in issue. The risk of injury as elucidated by the safety expert may not have been great, but a jury could reasonably have concluded that the gravity of an accident resulting from falling through a roof would have been great. The overall magnitude of the risk is determined not only by the probability of harm, but also the serious character of the harm which may result. Restatement (Second) of Torts §§ 293, 388, Comment n (1965). Appellant presented evidence that it was feasible and common practice to label each sheet of other, similar sorts of roofing materials. Finally, there was evidence of the supplier's practice in passing on the brochure to the construction site, and the expert's opinion that the brochure could easily be lost so that each sheet should be labelled, regardless of the brochure. This evidence, covering all four points above, was sufficient to overcome a motion for directed verdict.
Courts in other jurisdictions have reached similar conclusions. In Griggs v. Firestone Tire and Rubber Co., 513 F.2d 851 (8th Cir.), cert. denied, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), the court analyzed the warning a tire manufacturer sent by catalog to dealers that a mismatched rim assembly could cause a tire to explode. The court refused to overturn a jury's award of damages to an injured driver, stating:
[W]e cannot say as a matter of law that defendant discharged its duty through the informational literature which it supplied to the various parts distributors and automobile manufacturers using its rims. To so hold would be to ignore the fact that the jury was not bound to consider such an informational campaign as necessarily equivalent to the exercise of reasonable care . . . [which] may dictate that a warning be impressed directly on the article when (as here) the danger is great *993 and such a warning would not be impracticable or unduly burdensome. [Id. at 858 (citation omitted).]
On facts very similar to these, the Supreme Court of North Dakota in Seibel v. Symons Corp., 221 N.W.2d 50 (N.D.1974), upheld a verdict in favor of a construction worker who attached himself to a v-shaped end rod which would not support his weight. The technical manual furnished by the manufacturer to the employer warned of this specific danger, but the manual was held to be an insufficient alert. The court cited failure to use other, more direct means, such as red paint or decals on each end rod, as a factor relevant to the manufacturer's negligence. Similarly in Eck v. E.I. Du Pont De Nemours & Co., 393 F.2d 197 (7th Cir. 1968), a laborer injured by dynamite in clearing a field charged that the manufacturer's failure to warn of a minimum safe distance was the cause of his injury. Defendant had included general instructions in each carton of dynamite and a notice that a more specific pamphlet for field clearing was available upon request. The court reversed summary judgment for defendant, because a jury question was presented on whether this method of warning gave reasonable assurance that the information would reach those at risk.
Some courts have reached a contrary conclusion when it was clear that supervisory personnel had received the warning or already knew about the danger. In another dynamiting case, the Third Circuit Court of Appeals held the manufacturer had no duty to warn that dynamite placed in a freshly drilled hole in rock might be set off by the heat, because it was shown by testimony of the injured workman's foreman that the danger was well known to blasting supervisors. Hopkins v. E. I. DuPont De Nemours & Co., 212 F.2d 623 (3d Cir.), cert. denied, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954). Again in Jacobson v. Colorado Fuel and Iron Corp., 409 F.2d 1263 (9th Cir. 1969), a foreman was killed when the defendant-manufacturer's steel strand broke during the pouring of prestressed concrete. The decedent's supervisor admitted knowledge of the danger. The court concluded:
"[W]here a supplier furnishes chattels, the use of which is to be directed to technicians or engineers, it is sufficient to insulate the supplier from liability for failure to warn if the warnings given are sufficient to apprise the engineers or technicians of the dangers involved, or if the technicians have knowledge of the dangers involved. . . . [T]here is no duty of a supplier of a chattel to foresee that the engineers or technicians will fail to follow warnings given or to employ knowledge possessed." [Id. at 1273 (quoting with approval the trial court's conclusion of law).]
See also Jackson v. Coast Paint & Lacquer Co., 499 F.2d 809 (9th Cir. 1974). Contra, Seibel v. Symons Corp., supra (even though brochure with warning did reach construction supervisor, jury could conclude that manufacturer was negligent in not labelling each v-shaped end rod).
This case differs factually from Hopkins and Jacobson, however, because no facts in the plaintiff's case established that the warning reached appellant's supervisor, the building contractor. The middleman who sold the asbestos-concrete sheets merely testified that, as a general practice, the brochure containing the warning, which the manufacturer stuck between the first and second sheets in a stack, would remain in the stack of sheets when it proceeded to the construction site. No supervisory employers of the contractor testified one way or the other as to whether they knew about the need for planks or chicken ladders. We are unable to conclude, as did the trial court, that the fact that a crude test was performed at the construction site established that the warning had indeed reached the building contractor. The question should have been left to the jury.
To be sure, appellee Gleit did state that he had knowledge of the warning to use planks or chicken ladders in all roofing work. However, we cannot say as a matter of law that this admission relieves G.A.F. of a duty to warn, or affects the independent liability of Gleit and Olenek.
*994 It is not established that Gleit and Olenek, as design engineers, necessarily had a duty to pass on the warning to the construction workers. Whether that duty exists is a separate issue in the case. Their role in the project may have been simply to prepare designs. On this record, they were not a supplier of the item, the kind of middleman the Restatement (Second) of Torts § 388, Comment n at 308 (1965) discusses when it states "[m]odern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so." Nor were Gleit and Olenek the type of supervisory technician or engineer at issue in Hopkins and Jacobson, who were present at the work site, and whose duty it would be to direct the use of materials in question, and pass on warnings. Thus, Gleit and Olenek were outside the distribution chain, on which the manufacturer can rely to convey a warning and, accordingly, their negligence in failing to warn by a notation on the blueprints is a question separate from the negligence of G.A.F.. Whether Gleit and Olenek were negligent, also, is for the jury to determine, taking into consideration all relevant factors, such as who had control of the construction site, other types of safety precautions, and national building code requirements. See Barrett v. Harris, D.C.App., 406 A.2d 1266 (1979) (question of negligence is usually one of fact for the jury, unless only one reasonable inference may be drawn); Meny v. Carlson, 6 N.J. 82, 77 A.2d 245 (1950) (whether contractor who owned scaffold owed duty to injured employee was question for jury).
Finally, we also disagree with the trial court's conclusion that the material was being misused in that it was obviously not meant to be a walking surface. G.A. F.'s salesman testified that the material was designed to be used for roofing as well as siding, and that a number of persons at G.A.F. were aware that it was common practice in the industry to walk on the material without planks or chicken ladders. From this testimony, it would be possible for a reasonable person to conclude that the manufacturer should have foreseen that its product would be used as a walking surface. "The duty to warn unquestionably rests upon foreseeability . . . ." 1 Frumer & Friedman, Products Liability § 8.03[1], at 161 (1978); see Simpson Timber Co. v. Parks, 369 F.2d 324 (9th Cir. 1966) (evidence that manufacturer knew longshoremen walked on doors packaged in bundles, so that glass panes created a well, sufficient to create duty to warn not to step on that portion of package over glass); Sills v. Massey-Ferguson, Inc., 296 F.Supp. 776 (N.D. Ind.1969) (question for jury whether manufacturer could foresee, and thus had duty to warn, that lawn mower might throw objects 150 feet). But see Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23, cert. denied, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957) (danger that elastic exerciser would snap and put out an eye need not be warned against, because danger is both remote and obvious to user).
Because plaintiff presented evidence on each issue necessary to sustain his action, from which a reasonable person could infer a failure to warn on the part of all defendants, the directed verdict must be overturned and the case remanded for further proceedings.
Reversed and Remanded.
GALLAGHER, Associate Judge, concurring:
Lest a contrary impression be gathered from this opinion, the evidence in this case does not actually lend itself to an application of the doctrine of strict liability-apart, that is, from a failure to warn question sounding in negligence. There was no evidence of a defect in the product.
NOTES
[*] There is, accordingly, a two-step inquiry: (1) Was there a negligent failure to warn? (2) If so, can the manufacturer be held strictly liable (when such liability has been alleged)? The availability of strict liability may determine, for example, whether a manufacturer will be permitted to proffer a defense of contributory negligence. See R. Hursh & H. Bailey, American Law of Products Liability §§ 4.34, 4.35, 8.36 (2d ed. 1974).