Shane DUFFEE, minor, By and Through guardian and next friend, Rose THORNTON, Plaintiff,

v.

MURRAY OHIO MANUFACTURING CO.; Walmart Stores, Inc.; and Shimano American Inc., Defendants.

No. 94–4022–SAC.

United States District Court, D. Kansas.

Feb. 8, 1995.

Mark W. Works, Works, Works & Works, P.A., Topeka, KS, for Rose Thornton.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Murray Ohio Mfg. Co.

David E. Larson, Melody L. Nashan, Watson & Marshall L.C., Kansas City, MO, for Shimano American Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

This product liability case comes before the court on two motions. The defendants Murray Ohio Manufacturing Co. ("Murray") and Walmart Stores, Inc. ("Walmart") move for partial summary judgment on the plaintiff's failure to warn claim (Dk. 83) and for summary judgment (Dk. 136) on the plaintiff's remaining claims.

On February 21, 1992, at approximately 6:50 p.m., almost forty-five minutes after sunset, the plaintiff, Shane Duffee, an eleven-year old boy, and his friend, James Prout, were riding from James's home to Shane's home on their bicycles. Ahead of James, Shane was riding downhill on 26th Street towards the intersection with Clay Street. He did not stop for the stop sign at the intersection. James observed Shane's rear tire lock-up about even with the stop sign. As Shane's skidding bicycle continued through the intersection, he was struck on the left side by the right front bumper of a moving car on Clay Street. Shane was

thrown from the bicycle in the direction carried by his forward momentum. Shane allegedly suffered serious injuries including a head injury and brain damage as a result of this accident.

In the middle of December of 1991, Shane's father, Chris Duffee, had given Shane a Murray BMX 20" bicycle which he had purchased at a Walmart store in Sedalia, Missouri. The brake on the bicycle was manufactured by the defendant Shimano American Inc. ("Shimano"). Shane had used the bicycle for approximately two months before his accident.

Shane alleges the defendants Murray and WalMart failed to provide him with an instruction booklet and "failed to warn of the dangerous propensities of such bicycles." (Dk. 129 at p. 5). Shane further alleges the defendants defectively designed the particular Murray bicycle by using the rear coaster or foot brake system instead of the two-wheel caliper or hand brake system. The plaintiff couches these same basic allegations within the following legal theories: strict liability, negligence, implied warranty of merchantability, and express warranty.

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and New-*

*borns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1117 (10th Cir.1991). A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

For purposes of these motions, the court considers the above summary of the case and the following statement to be the relevant uncontroverted facts.

For the two months before the accident, Shane rode his bicycle around the neighborhood, to visit friends and to school. After visiting his friend, James Prout, Shane often coasted down 26th Street on his way home. Shane typically slowed his bicycle down before reaching the intersection with Clay Street, "bunny hopped" the curb, turned right, and rode on the sidewalk along Clay Street. On one or two occasions, Shane went through the 26th Street and Clay Street intersection without stopping at the stop sign. Shane said he had used the brakes often and, with the exception of the accident, had stopped the bicycle when needed. James Prout confirmed Shane's use of the Murray BMX's coaster brakes.

The plaintiff's designated expert, Ronald Wells, a qualified mechanical and metallurgical engineer, testified to certain basic characteristics of operating a bicycle. Riding and stopping a bicycle is a learning process, and experience is the primary teacher. Beginning with balance, the rider with time and experience learns and acquires a "feel" for turning radii and stopping distances under a variety of conditions and circumstances. That "feel" or experience serves the rider in deciding what must be done to operate a bicycle safely. In any given situation, the stopping distance of any bicycle depends on a number of variables, including: the type of brakes (coaster or caliper), the slope on which braking occurs, the operator's weight,

the co-efficient of friction of the road surface, the condition of the tires, weather conditions, velocity at the time of braking, and condition of the brakes. Experience is a very important factor in the safe use of any bicycle.

Coaster brakes or foot brakes have been used on bicycles for decades and are commonly accepted in the industry. Under dry weather conditions and with all equipment properly adjusted, a bicycle with caliper brakes has a shorter stopping distance than a bicycle with only a rear coaster brake. There are, however, risks of use unique to the caliper braking system. Among the recognized risks are front wheel lock-up, loss of control during braking, dampness affecting brakes, increased need for repairs and adjustment, and insufficient grip strength to activate brakes.

The Consumer Product Safety Commission ("CPSC"), by regulation, requires foot brakes or coaster brakes to stop a bicycle within fifteen feet when operated at a test speed of at least ten miles per hour by an individual weighing at least one hundred and fifty pounds. 16 C.F.R. §§ 1512.5(c)(1) and 1512.18(e)(3).[1] Shane's bicycle met the CPSC's force test standards and an exemplar model of Shane's bicycle complied with all of the CPSC's mandatory brake standards.

The plaintiff's expert, Ron Wells, opined that Shane's bicycle was unreasonably dangerous simply because it lacked a caliper braking system. Wells reasoned that the caliper system offered a stopping distance nearly one-fourth as long as the coaster system and that it did not materially interfere with function nor materially increase cost. Wells admitted that a designer and manufacturer of a 20" bicycle would consider a variety of information and studies in choosing an appropriate braking system. Wells further conceded that he would expect the designer to have more knowledge and information than that gained from the personal experience of riding bicycles and that learned from talking with a single bicycle dealer. Wells

did not use a methodology comparable to that used by a bicycle designer in arriving at his conclusion that the particular bicycle was defectively designed in having only a rear coaster brake system. The defendants' experts employed a methodology which included more of the relevant factors considered by a bicycle designer in choosing a brake system.

**Failure to Warn Claim**

■ As alleged and argued by the plaintiff, this claim is seriously lacking in necessary detail. The plaintiff first does not. specifically identify the risk or danger of which the defendant failed to warn. He· further omits telling the court the subject matter or type of reasonable warning that should have been given. The plaintiff points to different information and warnings supplied in Murray's instruction booklet and argues the same should have been given to his client. Finally, the plaintiff assumes, instead of proving, a causal connection between no warning and his accident. His expert's testimony on this claim does not supply the missing details. Other than his suggestion that parents be told before a bicycle purchase that coaster brakes have a longer stopping distance than caliper brakes, Wells does not specify the nature and content of a reasonable warning. Moreover, the plaintiff does not cite any opinion by Wells regarding causation for this claim. All of these proof shortcomings make summary judgment inevitable on the plaintiff's failure to warn claim.

■ In Kansas, a failure to warn claim, whether couched in negligence or strict liability, employs the same measure of reasonableness under the circumstances. *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1099 (10th Cir.1991); *Richter v. Limax Intern., Inc.,* 822 F.Supp. 1519, 1521 (D.Kan.1993), *rev'd on other grounds,* 45 F.3d 1464 (10th Cir. 1995); *Miller v. Lee Apparel Co.,* 19 Kan. App.2d 1015, 1029, 881 P.2d 576 (1994), *rev. denied,* —— Kan. —— (Nov. 8, 1994); *see Mays v. Ciba–Geigy Corp.,* 233 Kan. 38, 57,

---

**1.** The plaintiff erroneously reads the CPSC standards as requiring a braking distance of fifteen feet regardless of speed. It is uncontroverted that the bicycle at issue does not have a linear velocity of fifteen miles per hour or more when

pedaled at the crank rate of 60 revolutions per minute. Consequently, the applicable CPSC standards require a braking distance of fifteen feet when travelling at least ten miles per hour.

661 P.2d 348 (1983) (quoting *Russell v. G.A.F. Corp.,* 422 A.2d 989, 991 (D.C.App. 1980)). As for the manufacturer's duty to warn, Kansas courts follow the rule stated in Restatement (Second) of Torts § 388 (1963):

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Long v. Deere & Co.,* 238 Kan. 766, 772–73, 715 P.2d 1023 (1986) (emphasis added); *see Richter v. Limax International, Inc.,* 45 F.3d 1464, 1468 (10th Cir.1995).

■ The Kansas Product Liability Act ("KPLA"), K.S.A. 60–3301 *et seq.,* limits a manufacturer's duty to warn. *Patton v. Hutchinson Wil–Rich Mfg. Co.,* 253 Kan. 741, 748, 861 P.2d 1299 (1993). A manufacturer has no duty to warn if (1) the warnings would relate "to precautionary conduct that a reasonable user or consumer would take for protection," (2) the situation is one where a reasonable user or consumer would have taken the precaution, and (3) the warnings would relate to open and obvious hazards that a reasonable user or consumer would appreciate. *Id.* at 757, 861 P.2d 1299. The KPLA at K.S.A. 60–3305 specifically provides:

In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or in-

structing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

(b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.

In short, Kansas law does not impose a duty to warn of dangers actually known to the product user, *Long,* 238 Kan. at 773, 715 P.2d 1023, or of obvious common dangers or generally known risks connected with the use of the product. *Mays,* 233 Kan. at 58, 661 P.2d 348. " 'If a danger is obvious, then its obviousness constitutes a warning, and the product seller's failure to provide a separate warning should not constitute a defect.' " *Miller,* 19 Kan.App.2d at 1030, 881 P.2d 576 (quoting Westerbeke, *Some Observations on the Kansas Product Liability Act (Part 2),* 54 J.K.B.A. 39, 44 (1985)).

In support of his failure to warn claim, the plaintiff argues, in part, that had he received the Murray instruction booklet he would have learned the proper way to operate the bicycle. According to the plaintiff, "[n]o product is safe without written instructions or express instructions on how to use such product." (Dk. 113 at 10). He further alleges that he did not receive warnings about the dangers of the bicycle including "the inadequacies of the coaster brakes." (Dk. 113 at 5).

Shane Duffee testified that he received instruction at school on operating bicycles. He knew to stop at stop signs and to wear a helmet. He knew not to ride his bicycle

without lights when it was dark. He knew how to stop his bicycle and how to use his coaster brake to slow the bicycle when going downhill. He knew to stop for approaching cars. Prior to the Murray BMX 20" bicycle, Shane had owned and used two other bicycles also equipped with only rear coaster brakes. Shane had approximately two months of experience in riding the Murray BMX 20" bicycle. He had frequently travelled down the 26th Street hill on his way home from James Prout's house. He had learned how to slow his bicycle while going down the hill so as to "bunny hop" the curb. On two occasions, Shane went through the stop sign at the 26th Street and Clay Street intersection simply because he was going too fast and did not want to stop.

The plaintiff fails to identify anything found in Murray's instruction booklet [2] which he did not otherwise know and which would have prevented this accident had he known it. Shane had experienced and learned how to engage his coaster brake so as to slow down the bicycle while going down the 26th Street hill. He also had experienced the acceleration produced going downhill and apparently had learned when he was going too fast to stop at the bottom. Because of Shane's actual knowledge, the defendants have no duty to warn or instruct him about exercising caution and braking while going downhill. *See Long,* 238 Kan. at 773, 715 P.2d 1023. "A product manufacturer or seller is not an insurer of the safety of persons who use the product." *Miller,* 19 Kan. App.2d at 1031, 881 P.2d 576 (citation omitted).

■ "Regardless of the theory upon which recovery is sought for injury in a products liability case, proof that a defect in the product caused the injury is a prerequisite to recovery." *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 235, 552 P.2d 938 (1976); *see, e.g., Cantrell v. R.D. Werner Co.,* 226 Kan. 681, 684, 602 P.2d 1326 (1979) (rule applies to express warranty claims);

*Lane v. Redman Mobile Homes, Inc.,* 5 Kan. App.2d 729, Syl. ¶ 2, 624 P.2d 984, *rev. denied,* 229 Kan. 670 (1981) (rule applies to negligence, breach of implied warranties and strict liability claims). The cause of an injury is that "which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Wilcheck,* 220 Kan. at 235, 552 P.2d 938. Proof of injury during use of the product, without more, is insufficient to establish that a defect in the product caused the injury. *Id.* at 235–36, 552 P.2d 938.

The plaintiff simply offers no proof that the defendants' lack of warnings has a causal connection with the accident. The plaintiff knew to keep a lookout, to stop his bicycle at stop signs, and to operate his brakes when going downhill so as to slow and stop. Any such warning would have reminded the plaintiff of only what he already knew were important basics in bicycle riding. The plaintiff does not demonstrate the significance of a warning or information that caliper brakes generally have a shorter stopping distance. The plaintiff does not allege how such a warning would have affected Shane's actions on the night of February 21, 1993. There is no evidence that Shane had operated a bicycle with caliper brakes and could be confused about the relative stopping distances of the two braking systems. Nor is there evidence of record to demonstrate that this information would have influenced Shane's father in his purchase decision. *Cf. Baughn v. Honda Motor Co., Ltd.,* 107 Wash.2d 127, 727 P.2d 655, 665 (1986). The plaintiff leaves it to speculation whether Chris Duffee would have purchased a bicycle with a caliper brake system had he known about the shorter stopping distances as well as the risks with caliper brakes including front wheel lock-ups, more frequent repair and adjustment, and

---

**2.** The booklet provided the following information on braking:

"Learn how to stop the bicycle. Check the brakes before riding. Be prepared to stop when you near a corner or intersection. When you ride on a wet road be careful because it

takes more distance to stop or turn the bicycle. Caliper brakes do not stop as quickly when wet. Small rocks and loose material also increase the stopping distance of the bicycle. Always allow enough distance for the brakes to take effect when stopping."

affected operation under wet conditions. There is nothing to suggest that a reasonable consumer knowing this same information would choose caliper brakes over coaster brakes. It is pure speculation to say that a reasonable consumer, like Chris Duffee, would not have purchased a bicycle with coaster brakes if told of all relevant risks. *See Baughn,* 727 P.2d at 665. Speculation and allegations are not enough to defeat a summary judgment motion.

Finally, the plaintiff overlooks proving the feasibility, adequacy and effectiveness of any proposed new warning. Judge Belot recently opined:

> In this court's view, a person cannot, after suffering an accident, simply draw up a warning limited to the dangers involved in that accident and argue that that warning *should* have been conveyed by the manufacturer or seller without first also establishing that that warning is adequate and that it actually *could* have been communicated in the manner proposed....

> Similarly, in a warning case, a plaintiff must do more than simply present an expert who espouses a new or different warning. He must establish that warning's feasibility, adequacy, and effectiveness. In this case, plaintiffs' experts' testimony fell woefully short of meeting this criteria.

*Meyerhoff v. Michelin Tire Corp.,* 852 F.Supp. 933, 947 (D.Kan.1994). Like in *Meyerhoff,* the plaintiff's expert's testimony here falls far short of proving any proposed warning as feasible, adequate, and effective. Unlike *Meyerhoff,* the plaintiff's expert here does not even propose a particular warning that should have been given.

The plaintiff's expert's testimony about the nature and content of any such warning was largely his own subjective belief and speculation unsupported by scientific validity. A bicycle rider typically learns from experience how best to maneuver and brake the bicycle under different conditions. This is a proposition that even the plaintiff's expert concedes. Consequently, the adequacy and effectiveness of any proposed warning on stopping distances are significant issues. The feasibility of any such warning is also a matter of some contention if and when consideration is given to all the different factors affecting stopping distance. In short, the plaintiff did not meet the burden facing him, and the defendant is entitled to summary judgment on the plaintiff's failure to warn claim.

**Defective Design**

■ The plaintiff alleges the defendants defectively designed the bicycle by equipping it with a coaster brake system rather than a caliper braking system. For this claim, the plaintiff relies exclusively on the opinion of his expert witness, Ron Wells. Coaster brakes are commonly accepted in the industry and are frequently found on juvenile bicycles. Even so, Wells essentially opined that it is not reasonable for a manufacturer to weigh the relative risks and characteristics of particular groups of bicycle riders and choose coaster brakes over caliper brakes. As will be seen, Wells' conclusory opinion lacks a reliable factual basis, an acceptable methodology, and the necessary validation.

"In Kansas, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use." *Deines v. Vermeer Mfg. Co.,* 752 F.Supp. 989, 995 (D.Kan.1990) (citing *Garst v. General Motors Corp.,* 207 Kan. 2, 19, 484 P.2d 47 (1971)). Under a strict liability theory, the plaintiff must prove the product "defective in a way that subjects persons or tangible property to an unreasonable risk of harm." *Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 114, 795 P.2d 915 (1990). The KPLA consolidates or merges all theories of legal liability in a products liability action "into one legal theory called a 'product liability claim." *Patton,* 253 Kan. at 756, 861 P.2d 1299 (citing K.S.A. 60–3302(c)).

The KPLA creates a "presumption of nondefectiveness" upon proof that the product complies with regulatory standards. *Miller,* 19 Kan.App.2d at 1026, 881 P.2d 576. Specifically, K.S.A. 60–3304(a) provides:

> When the injury-causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, the product shall be deemed not

defective by reason of design or performance, ..., unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.

The "injury-causing aspect" alleged here is the coaster brake.

It is uncontroverted that the brakes on Shane's bicycle met the CPSC's force test standards. Because Shane's bicycle was damaged in the accident, the experts were not able to test its compliance with CPSC's stopping distance performance standards. Experts on both sides agreed, however, that they observed nothing with Shane's coaster brakes which could have caused a malfunction. An exemplar of the same model of Shane's bicycle did pass the CPSC's stopping distance performance standards. At speeds averaging approximately ten miles per hour, the tested bicycle stopped within eleven feet or, in other words, under the fifteen feet regulatory standard.

■ The plaintiff erroneously argues that the accident itself proves the brakes were not in compliance with the regulatory standard. The expert witnesses agree that Shane was travelling in excess of twenty-one miles per hour when he applied the brakes. Therefore, the fact that Shane did not stop within fifteen feet of the stop sign does not demonstrate that his bicycle would not have stopped within fifteen feet had he been travelling at a rate of ten miles per hour. The plaintiff's bald assertion to the contrary is untenable.

■ From the evidence of record, the only reasonable inference is that Shane's coaster brakes satisfied all relevant CPSC standards. This means the plaintiff "is required to rebut the presumption of nondefectiveness to survive ... [defendants'] summary judgment motion." *Miller*, 19 Kan.App.2d at 1026, 881 P.2d 576. A plaintiff overcomes this presumption with proof by a preponderance of the evidence that a reasonable product seller or manufacturer would have done more. *Martin v. MAPCO Ammonia Pipeline, Inc.*, 866 F.Supp. 1304, 1308 (D.Kan.1994); *Pfeiffer v. Eagle Mfg. Co.*, 771 F.Supp. 1133, 1138

(D.Kan.1991); *see O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1443 (10th Cir. 1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). "Testimony that a product 'could have been made a lot safer' or in alternative ways with different warnings or instructions does not create a jury question under K.S.A. 60–3304(a)." *Miller*, 19 Kan.App.2d at 1026, 881 P.2d 576 (citation omitted). The plaintiff must come forth with evidence that a reasonably prudent product seller or manufacturer could and would have done more. *Id.* Specifically here, the plaintiff must prove that a reasonably prudent bicycle manufacturer and designer could and would have chosen caliper brakes over coaster brakes for this particular model and size of bike even though the coaster brakes meet regulatory standards. The plaintiff offers no admissible or valid evidence to prove this proposition and to rebut the presumption of nondefectiveness.

One way of proving that a reasonable manufacturer would do more is for the plaintiff to show that the regulatory standards are outdated. *Alvarado v. J.C. Penney Co., Inc.*, 735 F.Supp. 371, 373 (D.Kan.1990) (quoting comments to § 108 of the Model Uniform Products Liability Act). Another way is to show that a reasonable manufacturer knows of dangers with the product's use that are not contemplated by the regulatory standard. *Id.* The plaintiff does not rely on either method of proof. In fact, the plaintiff's proof is really little more than his expert witness's subjective belief about what a manufacturer should do. The plaintiff's expert does not purport to base his opinion on any facts or knowledge about industry practice, standards or methodology for bicycle design. "[A] expert's opinion is not to be accepted merely because it is articulated, but must instead have a sufficient factual basis." *Anderson v. National R.R. Passenger Corp.*, 866 F.Supp. 937, 945 (E.D.Va.1994) (footnote omitted).

■ In a defective design case, it is not enough for the plaintiff simply to prove that a different design would have mitigated or avoided the plaintiff's injuries. *Garst*, 207 Kan. at 20, 484 P.2d 47. Because it is plausible to assume that after most accidents one could devise some design change in the prod-

uct to prevent the particular accident, consideration must be given to whether the product changes would increase the risk of other accidents or would interfere with the product's performance. *Id.; see Meyerhoff*, 852 F.Supp. at 947. Logically then, "a manufacturer is not obligated to adopt only those features which represent the ultimate in safety or design." *Garst v. General Motors Corporation*, 207 Kan. at 20, 484 P.2d 47.

As sources for his opinion, the plaintiff's expert, Ron Wells, relied on his own experience on bicycles, a conversation with a single bicycle retail dealer in Hutchinson, Kansas, and his own rudimentary testing of bicycle stopping distances conducted on the 26th Street hill. Wells admitted that a bicycle manufacturer in choosing a brake system should have more information than that gained from personal experience and a single conversation with a retail bicycle dealer. Wells conceded he had not investigated nor considered in any real detail the studies, tests or information that is or may be available on a number of matters, including: what information is generally accessible to and considered by a bicycle manufacturer in choosing one brake system over another; the age group of children expected to ride a 20" BMX bicycle; the size, strength and maturity of children in that age group; industry's experience with coaster brake systems on 20" bicycles; the grip strength of children expected to ride a 20" bicycle; the contrasting maintenance, replacement and adjustment needs of coaster brakes and caliper brakes; the ability of children expected to ride 20" bicycles to recognize the need for maintenance, replacement or adjustment of caliper brakes; the likelihood of front wheel lock-ups with caliper brakes under normal and emergency conditions when operated by children within the age group expected to ride 20" bicycles; the possible risks and injuries to children from front wheel lock-ups; and the increased stopping distance of caliper brakes under wet conditions. Wells further acknowledged that most of these factors were relevant in deciding which brake system to use on a 20" bicycle.

Wells practically conceded that he had reached his opinion without tracking the methodology or analysis that would be employed by a reasonable bicycle manufacturer or designer. To the extent that he considered any of the above factors, Wells limited his investigation to what he had learned from personal experience and talking with a single bicycle dealer. This approach is devoid of any meaningful and reliable factual basis for determining and weighing the relative factors involved in a manufacturer's product tradeoff decision.

In a nutshell, Wells considers stopping distance to be the paramount factor in choosing a bicycle's braking system. Wells, however, fails to offer any valid reason for why a manufacturer should and would give the same overriding weight to this single factor. Evidence of a safer alternative design is not proof that a reasonably prudent manufacturer of a 20" bicycle could and would have used them here. *See Miller v. Lee Apparel Co.*, 19 Kan.App.2d at 1027, 881 P.2d 576.

The court agrees with the defendants that Wells' opinion on what a reasonable manufacturer would do in these circumstances is not admissible. The Supreme Court recently said that the trial court has the duty to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, ——, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469, 480 (1993). "A district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 901 (7th Cir.1994) (citing *Daubert* ). "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" an expert "may testify thereto." Fed. R.Evid. 702. The Supreme Court in *Daubert* said that the word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481 (quoting *Webster's Third New International Dictionary* 1252 (1986)). "Proposed testimony must be supported by appropriate vali-

dation—i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481.

Wells' opinion on what a reasonable manufacturer could and would have done is not supported by appropriate validation. He arrived at his conclusion with an incomplete and inadequate factual basis. Wells himself testified that a product designer should consider more information than he did in choosing the appropriate brake system. He employed none of the recognized methods or "grounds" for evaluating a reasonable manufacturer's product tradeoff decisions. Because caliper brakes offered shorter stopping distances, Wells simply assumes a reasonable manufacturer would use them instead of coaster brakes on a 20" bicycle. Such unsupported speculation lacks the validity demanded by *Daubert. See Meyerhoff,* 852 F.Supp. at 947. Without admissible evidence to rebut the presumption of K.S.A. 60–3304(a), the plaintiff is unable to defeat summary judgment. *See Miller,* 19 Kan.App.2d at 1026, 881 P.2d 576.

IT IS THEREFORE ORDERED that the defendants Murray's and Walmart's motion for partial summary judgment (Dk. 83) on the plaintiff's failure to warn claim is granted;

IT IS FURTHER ORDERED that the defendants Murray's and Walmart's motion for summary judgment (Dk. 136) on the plaintiff's remaining claims is granted.