Lowell and Donna **MEYERHOFF**, individually, and as Administrators of the Estate of Kevin Lowell Meyerhoff, Deceased, Plaintiffs,

v.

**MICHELIN TIRE CORPORATION,** Defendant.

Civ. A. No. 91–1279–MLB.

United States District Court, D. Kansas.

May 10, 1994.

934

**936**

Richard D. Cordry, Cordry, Hund & Hartman, Wichita, KS, for plaintiffs.

David E. Rogers, Depew and Gillen, Richard C. Hite, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for Michelin Tire Corp.

Trisha A. Thelen, Darrell L. Warta, Foulston & Siefkin, Wichita, KS, for Timpte Trailer Co.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on plaintiffs' motion for a new trial pursuant to Federal Rule of Civil Procedure 59, (Doc. 151), and defendant's renewal of its motion for judgment after trial pursuant to Federal Rule of Civil Procedure 50(b), (Doc. 153).[1] The case arises out of events surrounding the death of plaintiffs' son, Kevin Lowell Meyerhoff. Mr. Meyerhoff, a truck driver, was killed when a Michelin truck tire he was attempting to repair, reinflate, and remount exploded. The details of the case are summarized in the court's previous Memorandum and Order denying Michelin's motion for summary judgment. (Doc. 135).

A jury trial was held on Michelin's liability to plaintiffs for an alleged failure to adequately warn their son. Evidence was adduced and the jury was asked to consider the following issues: (1) Whether "Michelin was at fault because it did not place an adequate warning on the sidewall of its tire"; and (2) whether "Michelin was at fault because the warnings contained in its literature [that was to accompany the tire] were not adequate." (Verdict, Doc. 147). The jury found that Michelin was at fault for failure to place a warning on its tire. The jury found Michelin *not* at fault on the warning claim pertaining to its literature.

The jury was further asked to consider the percentages of fault attributable to Michelin, Kevin Meyerhoff, J.W. Brewer Tire Company (the Michelin dealer that sold the tire), and John Fischer (Meyerhoff's employer and the purchaser and owner of the truck and the tire). The jury assigned the following percentages:

| | | | |
|---|---|---|---|
| Michelin Tire Corporation | (0% to 100%) | 11 | % |
| Kevin Meyerhoff | (0% to 100%) | 14 | % |
| J.W. Brewer Tire Company | (0% to 100%) | 10 | % |
| John Fischer | (0% to 100%) | 65 | % |

(Verdict, Doc. 147). The jury then assessed the following damages:

| | | |
|---|---|---|
| A. Kevin Meyerhoff's pain and suffering | | $140,000 |
| B. Nonpecuniary loss to Lowell and Donna Meyerhoff to date | | $115,000 |
| C. Future nonpecuniary loss to Lowell and Donna Meyerhoff | | $ 70,000 |
| D. Medical expenses for the care of Kevin Meyerhoff caused by the injury | | $ 693.45 |
| E. Loss of financial support | | $ 0 |
| F. Funeral expenses | | $ 8,500 |
| | TOTAL DAMAGES | $334,193.45 |

Judgment was entered in the amount of $36,761.28, eleven percent of the total damages found by the jury. (Doc. 148).

### PLAINTIFFS' MOTION FOR A NEW TRIAL

Plaintiffs contend that they are entitled to a new trial on three grounds: (1) the court

---

1. Originally, plaintiff moved for judgment notwithstanding the verdict or, in the alternative, a new trial. (Doc. 151). The request for a j.n.o.v. was subsequently abandoned. (Doc. 164).

erroneously instructed the jury and the jurors committed misconduct with respect to the determinations of fault and damages; (2) the court erred in not admitting plaintiffs' Exhibit 27 (a "Michelin Truck Tire Limited Warranty and Drivers Manual (10–91)") and plaintiffs' Exhibit 166 (a Michelin "Technical Bulletin, Inspection of 'Run Flat' Tires (6–30–88)"); and (3) the court erred in failing to instruct the jury on punitive damages. (Docs. 151 & 164).

 The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Royal College Shop, Inc. v. Northern Ins. Co.,* 895 F.2d 670, 677 (10th Cir.1990). "Such a motion may be granted when the court believes the verdict to be against the weight of the evidence, when prejudicial error has entered the record, or when substantial justice has not been done." *Foster v. Bd. of Trustees of Butler Cty. Com. Col.,* 771 F.Supp. 1122, 1125 (D.Kan.1991) (citing *McHargue v. Stokes Div. of Pennwalt Corp.,* 912 F.2d 394, 396 (10th Cir.1990); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988); *Holmes v. Wack,* 464 F.2d 86, 88–89 (10th Cir.1972)). The moving party "must demonstrate trial errors which constitute *prejudicial* error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). "[N]o error in any ruling or order or in anything done or omitted by the trial court or by the parties is ground for granting a new trial ... unless the error or defect affects the substantial rights of the parties." *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978) (citing Fed.R.Civ.P. 61).

### I. Judicial Error and Juror Misconduct With Respect to Fault and Damages

Post-trial, on October 27, 1993, plaintiffs' counsel was contacted by the jury foreperson, William Davis. Mr. Davis told plaintiffs' counsel that the jury had misunderstood the court's instructions regarding fault and damages. According to Mr. Davis, the jurors believed, based on the court's instruction 27,[2] that the plaintiffs' recovery would only be reduced by the percentage of fault attributable to Kevin Meyerhoff and, consequently, that plaintiffs would receive eighty-six percent, rather than eleven percent, of the total damages awarded.

Prompted by the juror's call, plaintiffs now contend that instruction 27 "misstates" Kansas law concerning comparative fault and misled the jury, mandating a new trial. (Doc. 164, p. 4). Plaintiffs further contend that "the jury may have predetermined the amount it desired to award plaintiffs and calculated percentages of fault and damages to correspond to the predetermined figure," an improper practice which prejudiced plaintiffs and warrants a new trial. (Doc. 164, pp. 8–9).

The court is unimpressed by plaintiffs' arguments.

 First, plaintiffs did not actually raise instruction 27 as a ground for a new trial in their motion, (Doc. 151), but did so in the memorandum in support of their motion, (Doc. 164). The memorandum was filed more than ten days after judgment was en-

---

**2.** Instruction 27 was as follows:

In deciding this case, your first obligation is to determine which, if any, persons are at fault. The persons to whom you have the discretion to assign fault are:

Michelin Tire Corporation
Kevin Meyerhoff
J.W. Brewer Tire Company
John Fischer

Next, you will need to assign a percentage of fault to each person you find to be at fault. For a person not at fault, show 0% on your verdict form. For any person at fault, show 1% to 100% on your verdict form. If any persons are found at fault, the fault of all the persons, when added together on your verdict form, must total 100%.

The laws of Kansas applicable to this case require me to reduce the amount of damages you award to plaintiffs Lowell and Donna Meyerhoff by the percentage of fault that you find is attributable to Kevin Meyerhoff. The plaintiffs will be entitled to recover damages if defendant Michelin Tire Corporation is found to be at fault *and* their son, Kevin Lowell Meyerhoff, is found to be less than 50 percent at fault in the accident.

tered. Hence, the court is not required to even consider this ground for new trial. Fed.R.Civ.P. 59(b).

█ Second, even if properly raised, motions for new trial based upon some infirmity in instructions are not viewed with favor. Plaintiffs' counsel did not object to the court's instruction 27 or offer a different or additional instruction for purposes of clarification. Fed.R.Civ.P. 51 provides "[n]o party may assign as error the giving ... of an instruction unless that party objects thereto before the jury returns to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

█ Third, even if plaintiffs' counsel had raised at trial the argument he now makes, the court would have rejected it. Contrary to plaintiffs' assertions, instruction 27 does not "misstate" Kansas comparative negligence law. The laws of Kansas *do* require the court to "reduce the amount of damages [the jury] award[ed] to plaintiffs ... by the percentage of fault that [the jury] f[ound] [wa]s attributable to Kevin Meyerhoff." K.S.A. 60–258a subsection (a) specifically provides that "the award of damages to any party in [a negligence] action shall be diminished in proportion to the amount of negligence attributed to such party" and that "[i]f any such party is claiming damages for a decedent's wrongful death," as the plaintiffs were in this case, "the negligence of the decedent, if any, shall be imputed to such party." The court's instruction tracks the Pattern Instructions for Kansas regarding comparative fault, PIK 2d 20.01 (Supp.1993). The Kansas Supreme Court has expressly mandated that that instruction be given.

> PIK Civ.2d 20.01, or the substance thereof, *including both of the last two paragraphs,* should be included in the jury instructions in all comparative negligence cases. Failure to so instruct the jury may well be reversible error.[3]

*Nail v. Doctor's Building, Inc.,* 238 Kan. 65, 68, 708 P.2d 186 (1985) (emphasis added).

The aim of these two paragraphs in PIK Civ.2d 20.01—the last paragraph in the court's instruction 27—is to communicate the infamous "49 percent" rule to the jury. That was the primary concern of the Kansas Supreme Court in *Nail.* *See* 238 Kan. at 66, 708 P.2d 186. The court, like the PIK committee, chose the most sensible way of communicating the "49 percent" rule: first, informing the jury that the plaintiffs were not entitled to recover damages attributable to the fault of their son—sentence one—and, second, informing the jury that such fault must be less than fifty percent of the total fault in order for plaintiffs to recover at all—sentence two.

According to what Mr. Davis told plaintiffs' counsel, the jury may have inferred that plaintiffs could recover from Michelin all damages not attributable to the fault of their son, including damages that resulted from the fault of others for whom Michelin was not responsible. However, that is not what the instruction said. Moreover, that interpretation made no sense given other instructions and the arguments presented at trial. The jurors knew that plaintiffs and Michelin were the only parties in the case. It was also disclosed that John Fischer could not be sued because the statute of limitations on the claim against him had run. (Doc. 156, pp. 121–23). Nevertheless, the instructions directed the jury to assign percentages of fault to not only Michelin and plaintiffs' son, but also John Fischer and J.W. Brewer Tire Company. The purpose of assigning fault to John Fischer and J.W. Brewer Tire Company was obvious: To determine the amount of damages attributable to and recoverable from *Michelin.* During the trial, Michelin's attorneys constantly tried to pin the blame for Mr. Meyerhoff's death on John Fischer, Kevin Meyerhoff himself, and, to some extent, J.W. Brewer Tire Company. Plaintiffs' attorney, meanwhile, tried to dispel any notion that anyone other than Michelin was at fault. Having heard these respective positions, it is incomprehensible how any of the jurors could have concluded from the court's instructions that plaintiffs would be allowed

---

**3.** In this case, the court combined the last two paragraphs of PIK Civ.2d 20.01 into one para- graph consisting of two sentences.

to recover from Michelin damages attributable to John Fischer and J.W. Brewer Tire Company.

Finally, the court is unpersuaded by plaintiffs' claim of jury misconduct. Based upon the jury foreman's post-verdict conversation with counsel, plaintiffs contend

> it is clear that the jury intended for plaintiffs to receive 86% of the total damages awarded. Consequently, plaintiffs believe that the jury may have predetermined the amount it decided to award plaintiffs and calculated the percentages of fault and damages to correspond to the predetermined amount. This method of awarding damages clearly disregards the court's instructions, depriving plaintiffs of their right to have this matter fairly decided.

(Doc. 164, pp. 8–9).

The court does not perceive jury misconduct. It is apparent that the jury followed the court's instructions. The jury assigned fault and determined damages. There is nothing on the face of the verdict form to indicate any inconsistency in the verdict. The jurors were individually polled in open court immediately after the verdict was announced and every juror affirmed the verdict.

■ Plaintiffs' attempt to win a new trial based upon post-verdict statements of a juror invokes Fed.R.Evid. 606(b) which provides:

**Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

There is little authority in this circuit regarding the application of Rule 606(b). In *Eastridge Development Co. v. Halpert Associates*, 853 F.2d 772, 783 (10th Cir.1988), the plaintiff asked the jury to return a verdict of $260,000. The jury returned a verdict of $208,000 and found the plaintiff 20% at fault ($260,000 reduced by 20% = $208,000). Rejecting a Rule 606(b) objection, the trial court considered the jury foreman's affidavit and a telephone conversation transcript which convinced the court that in rendering its verdict of $208,000, the jury deducted 20% rather than rendering its intended verdict of $260,000. The trial court amended the verdict from $208,000 to $260,000 and the Tenth Circuit affirmed the amendment, accepting the trial court's conclusion that the jury had made a "clerical error." A "clerical error," of course, is not jury misconduct. Plaintiff did not request a new trial based on the juror's statements and there is nothing in the opinion which indicates that the Tenth Circuit intends to permit trial courts to ignore or sidestep Rule 606(b) whenever some post-verdict remark by a juror is raised in support of a motion for new trial. The court is satisfied that the jury foreman's statements are inadmissible under Rule 606(b).[4]

■ Assuming, for purposes of argument, that the juror's statements can be received under Rule 606(b), they do not serve as a basis to amend the verdict because they do not raise a "clerical error." At most, the statements show that the jurors understood and followed the court's instructions but may not have fully understood the effect of their

---

4. Although application of Rule 606(b) in situations such as this is not completely uniform, *see McCullough v. Consolidated Rail Corp.*, 937 F.2d 1167 (6th Cir.1991), the court believes that the better rule is found in *Karl v. Burlington Northern Railroad Co.*, 880 F.2d 68, 73–75 (8th Cir. 1989), where the court held that evidence of the jury's misinterpretation of the court's instructions is incompetent and inadmissible under Rule 606(b) and should not be considered by the trial court to amend a verdict.

verdict. If so, such a misunderstanding does not serve as a basis for a new trial.[5]

## II. *Error in Excluding Plaintiffs' Exhibits*

■ Plaintiffs contend the court erred in not admitting plaintiffs' exhibits 27 and 166. According to plaintiffs, these exhibits were relevant to their *punitive damages* claim and were offered

> to show that defendant Michelin had an effective means to communicate an adequate warning but embarked on a course of conduct which prevented consumers of its products from obtaining knowledge or information of the potential deadly force contained in a fully inflated Michelin truck tire, in callous disregard for the safety and well being of consumers of Michelin tires.

(Doc. 164, p. 7). The admissibility of both exhibits was governed by the Federal Rules of Evidence and the Kansas Products Liability Act, K.S.A. 60–3301 *et seq.*

■ It is well established in this court, and elsewhere, that no error in the admission or exclusion of evidence can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties. *Green Const. Co. v. Kansas Power & Light Co.*, 759 F.Supp. 740, 743 (D.Kan. 1991), *aff'd*, 1 F.3d 1005, 1013–14 (10th Cir. 1993) Fed.R.Civ.P. 61. The court finds no error in its rulings regarding exhibits 27 and 166.

Exhibit 27 was a revised edition of a "Michelin Truck Tire Limited Warranty and Drivers Manual." The warranty manual was published in October 1991, nearly two years after the date of Kevin Meyerhoff's accident, March 10, 1989, and almost three years after the tire in question was sold to John Fischer on January 27, 1988. Exhibit 166 was a Michelin "Technical Bulletin" regarding the "Inspection of 'Run Flat' Tires." This technical bulletin was issued on June 30, 1988, between the date that the Michelin truck tire was sold to John Fischer and the date Kevin Meyerhoff was killed. Both the warranty manual and the technical bulletin reflected post-sale changes in Michelin literature concerning its truck tires and were therefore excluded under K.S.A. 60–3307(a):

> (a) In a product liability claim, the following evidence shall not be admissible for any purpose:
>
> (1) Evidence of any advancements or changes in technical or other knowledge or techniques, in design theory or philosophy, in manufacturing or testing knowledge, techniques or processes in labeling, warning of risks or hazards, instructions for the use of such product, if such advancements or changes have been made, learned or placed into common use subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer; and
>
> (2) evidence of any changes made in the designing, planning, formulating, testing, preparing, manufacturing, packaging, warnings, labeling or instructing for use of, or with regard to, the product in issue, or any similar product, which changes were made subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer.

Plaintiffs contend that the warranty manual and technical bulletin should not have been excluded under K.S.A. 60–3307(a) because they were "relevant to defendant Michelin's conduct in not providing adequate warnings about the known hazards of reinflating a Michelin truck tire after it had been operated in an underinflated condition *both before and after the explosion which killed Kevin Meyerhoff.*" (Doc. 164, p. 8) (emphasis added). Plaintiffs further argue that K.S.A. 60–3307(a) was inapplicable because the exhibits were not being offered to show post-sale changes or remedial measures by Michelin, but a lack thereof.[6]

Exhibit No. 166 clearly proves that defendant Michelin, prior to the date of Kevin Meyerhoff's death, could have issued a

---

5. The jury foreman's statements obviously do not support plaintiffs' belief that the jury "may have predetermined" the amount it wanted plaintiffs to receive and then calculated the percentages accordingly.

6. Subsection (b) of K.S.A. 60–3307 allows an exception when the defendant denies the feasibility of a particular remedial measure. That exception is inapplicable in this case.

technical bulletin on the topic of repair and reinflation of tires which had been operated underinflated but chose not to do so. Because Exhibit No. 166 does not indicate any advancement or changes made in warnings, labels, or instructions, K.S.A. 60–3307 does not prohibit its introduction. Likewise, Exhibit No. 27 was offered only to prove that as of October, 1991, defendant Michelin had not changed the nature and type of warnings given, despite knowing that injuries and death had resulted from persons reinflating a Michelin truck tire after it had been operated in an underinflated condition, evidence which is not precluded by K.S.A. 60–3307.

(Doc. 164, p. 8).

■ There are several flaws in plaintiffs' arguments. First, the operative date for purposes of admissibility under K.S.A. 60–3307(a) is the date the Michelin tire was sold, January 27, 1988, not the date of the accident, March 10, 1989.[7] *See Blackburn, Inc. v. Harnischfeger Corp.,* 773 F.Supp. 296, 302–03 (D.Kan.1991) (holding defendant's *pre-accident* remedial measures were inadmissible because they were taken *post-sale* ). Under K.S.A. 60–3307(a), evidence of post-sale changes and remedial measures is inadmissible "for any purpose," including punitive damages. Contrary to plaintiffs' assertions, exhibits 27 and 166 are both evidence of post-sale changes and remedial measures. Specifically, exhibit 27 contains a revision in the Michelin truck tire warranty manual's warning concerning the repair and reinflation of tires suspected of having been run flat or run at very low pressure.[8] This revision was not only made post-sale, but also post-accident. It is clearly inadmissible under K.S.A. 60–3307(a). Exhibit 166 was also published after the sale and is itself a post-sale change in the warnings and instructions for use given

by Michelin. Thus, it too is among the items excluded by K.S.A. 60–3307(a).

■ Second, even if exhibits 27 and 166 did not contain post-sale changes, evidence of Michelin's failure to take remedial action is admissible on plaintiffs' punitive damages claim only if probative of Michelin's state of mind at the time of the accident. *See O'Gilvie v. International Playtex, Inc.,* 821 F.2d 1438, 1449 (10th Cir.1987) (citing *Ettus v. Orkin Exterminating Co.,* 233 Kan. 555, 665 P.2d 730 (1983)). Exhibit 27 was issued almost two years after Kevin Meyerhoff's accident and proves nothing about Michelin's pre-accident state of mind. With respect to exhibit 166, plaintiff argues that it should have been admitted to show Michelin's *ability* to issue a post-sale technical bulletin concerning hazards associated with its truck tires. However, as Michelin points out, there was no dispute that Michelin could have issued a technical bulletin at any time, and other technical bulletins were admitted into evidence demonstrating that fact.[9]

Finally, it should be noted that the court had an opportunity to review exhibits 27 and 166 in connection with plaintiffs' claim for punitive damages. The court did not allow the issue of punitive damages to go to the jury. See discussion *infra.* If exhibits 27 and 166 had been admitted, the court's decision would not have been any different.

### III. *Error in Not Instructing the Jury on Punitive Damages*

■ Plaintiffs contend that the court erred in not allowing the jury to determine whether to assess punitive damages against Michelin. According to plaintiffs, the jury could reasonably have found clear and convincing evidence that Michelin's failure to

---

7. Similar exhibits issued *pre*-sale were admitted into evidence, including a truck tire warranty manual similar to exhibit 27.

8. A truck tire limited warranty manual dated "2/87," plaintiffs' exhibit 159, *was* admitted into evidence. Although exhibits 159 and 27 are largely the same, exhibit 27 contains the following addition relevant to this case: "Any tire suspected of having been run flat or run at very low air pressure (less than 80% of normal operating pressure) should never be re-inflated without

careful inspection of the entire tire. See any Michelin truck tire dealer at once." Significantly, the jury found that the warnings contained in Michelin's literature, exhibit 159, were adequate, even in the absence of this particular language.

9. For example, plaintiffs' exhibit 70, a Michelin technical bulletin dated July 19, 1982 and concerning safe tire mounting procedure, was admitted into evidence.

place a warning on the sidewall of its tire was "willful or wanton conduct." The court simply disagrees.

K.S.A. 60–3702(c) restricts punitive damages to cases in which it is proven, "by clear and convincing evidence *in the initial phase of the trial,* that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." (emphasis added). In this case, Michelin moved for summary judgment on plaintiffs' punitive damages claim, arguing that there was no clear and convincing evidence of willful or wanton conduct on Michelin's part. (Doc. 69). The court denied summary judgment, concluding that a reasonable jury might find clear and convincing evidence that Michelin did act willfully and wantonly. (Doc. 135, pp. 34–38). The court premised its decision on the evidence plaintiff had presented in response to Michelin's motion for summary judgment.

> [T]here is considerable evidence that Michelin negligently failed to place adequate warnings on its tires concerning the dangers of reinflating a tire that had been operated while underinflated. Plaintiffs claim that Michelin was aware of these dangers, and have set forth evidence indicating that many other tire manufacturers do provide such warnings. Although, at this stage of the litigation, the court perceives no clear and convincing evidence that Michelin's alleged failure to warn was deliberately or recklessly indifferent and thus willful or wanton, the court is persuaded that, at a trial on the issue, a reasonable jury might disagree.

(Doc. 135, pp. 37–38). In short, the court found that clear and convincing evidence "could foreseeably manifest itself at trial." (Doc. 135, p. 37 n. 12). This did not transpire. In fact, plaintiffs' evidence at trial proved far weaker than anticipated.[10]

Michelin, by contrast, presented evidence consistent with its prospective representations. Michelin's witnesses clearly articulated reasons for its opposition to sidewall warnings. Michelin showed how sidewall warnings are largely ineffective and can also be misleading. Michelin also offered evidence regarding different measures it takes to ensure that its dealers and purchasers are aware of tire safety concerns, thoroughly rebutting any allegation that the failure to warn Kevin Meyerhoff was the result of an intentional or reckless omission.

Pursuant to Federal Rule of Civil Procedure Rule 50, the court granted Michelin judgment as a matter of law on plaintiffs' punitive damages claim. The court was positively convinced that no *reasonable* jury could find any clear and convincing evidence that Michelin had deliberately or recklessly failed to warn plaintiffs' son or otherwise acted in a willful or wanton manner. The court remains so convinced and stands by its ruling. The court perceives no evidentiary basis for a punitive damages award.

### DEFENDANT'S MOTION FOR JUDGMENT AFTER TRIAL

At the conclusion of plaintiffs' case, Michelin moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The motion was denied. Michelin renewed its Rule 50 motion after all the evidence had been presented, and the motion was once again denied. Pursuant to Federal Rule of Civil Procedure 50(b), Michelin now renews its motion a second time. Michelin contends that, despite the jury's verdict, it is entitled to judgment as a matter of law because (1) there is no legally sufficient evidentiary basis for a reasonable jury to have found, in light of K.S.A. 60–3305, that Michelin had a duty to warn Kevin Meyerhoff, and (2) there is no

---

**10.** As stated *supra,* in their summary judgment response, plaintiffs claimed to have evidence that *many* other tire manufacturers placed warnings on the sidewalls of their tires. However, at trial, plaintiffs were able to produce only one *truck* tire (made by Goodyear) with warnings on it and, even then, plaintiffs' own experts admitted that the warnings were inadequate and would likely be ineffective. Plaintiffs also originally claimed that Michelin could have placed a yellow-colored warning on the side of its tire. However, at trial, plaintiffs produced no evidence that any tire manufacturer had ever placed warnings on tire sidewalls in a contrasting color, nor was plaintiff able to show that doing so would have been feasible. Plaintiffs did set forth their own proposed warning, drafted by one of their experts, but they could not point to any similar warning used on any existing truck tire.

legally sufficient evidentiary basis for a reasonable jury to have found that Michelin was at fault for having failed to place a warning on the sidewall of its tire. (Doc. 153).

 A Rule 50 motion may be granted when the "evidence presented supporting a proposition is insufficient to allow a reasonable juror to conclude that the position more likely than not is true." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, ——, 113 S.Ct. 2786, 2793, 125 L.Ed.2d 469 (1993); *see Western Plains Service Corp. v. Ponderosa Development Corp.*, 769 F.2d 654, 656 (10th Cir.1985). The evidence must be viewed in the light most favorable to the party against whom the motion is made, *Downie v. Abex Corp.*, 741 F.2d 1235 (10th Cir.1984), and be susceptible to no reasonable inferences which sustain the position of that party, *E.E.O.C. v. Univ. of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986). The court may not reweigh the evidence presented, pass upon the credibility of witnesses, or in any manner substitute its judgment for that of the jury. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir.1988).

## I. *Michelin Had No Duty to Warn Kevin Meyerhoff*

 In its renewed Rule 50 motion, as in its motion for summary judgment, Michelin contends that it had *no* duty to warn Kevin Meyerhoff of the dangers associated with repairing and reinflating a Michelin truck tire that had been run while underinflated. This contention is premised on the provisions of K.S.A. 60–3305:

[A]ny duty on the part of the manufacturer or seller of a product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to

possess, could and should have taken for such user or consumer or others, under all the facts and circumstances; (b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or (c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.

The jury was instructed in this regard. (Doc. 145, Inst. 8). *See* PIK Civ.2d 13.05 (Supp.1993).

Michelin contends that "two categories of evidence" presented at trial brought this case within the purview of K.S.A. 60–3305 and, therefore, that the jury could not properly have returned a verdict against Michelin. First, according to Michelin, plaintiffs' own experts, Mr. Forney and Mr. Wells, testified that a person engaged in repairing tires *should* have whatever special knowledge is required to do so safely. (Wells's Testimony, Doc. 156, pp. 107–08; Forney's Testimony, Doc. 157, p. 161). Michelin argues that this testimony establishes the applicability of K.S.A. 60–3305 in this case. The court, however, takes a different view of plaintiffs' experts' testimony. First of all, plaintiffs' experts were not called for the purpose of offering opinions about Kevin Meyerhoff and his knowledge of and experience with truck tires. Their testimony concerned the feasibility, adequacy and effectiveness of various tire safety warnings. Second, the particular questions and answers quoted by Michelin are general in nature; they are not specifically focused on whether Kevin Meyerhoff himself should have known about the particular tire safety concerns involved in this case. Both of plaintiffs' experts' answers merely indicate a belief that, ideally, any person who works on tires should be thoroughly trained and knowledgeable about tire safety, a belief which does not require expert testimony. The responses could be viewed as simply lamenting the fact that Kevin Meyerhoff was not fully trained or informed by either John

Fischer or Michelin in this case. Indeed, that must have been the jury's interpretation, given their clear rejection of Michelin's K.S.A. 60–3305 argument.

. That is not to suggest that Michelin's position was not supported by the evidence. The evidence showed that Kevin Meyerhoff had formerly performed a number of tire repairs while employed as a truck driver with a harvest crew and was apparently aware of instances in which truck tires had exploded. However, the evidence did not establish, as a matter of *law*, that Kevin Meyerhoff was such an experienced user that he should have fully appreciated the risk he was undertaking in attempting to repair and reinflate the Michelin truck tire. (See Doc. 135, p. 17, n. 5). The question was thus left to the jurors, and they decided in plaintiffs' favor on that point.

■ Second, Michelin asserts that there was unequivocal evidence that John Fischer should have provided Kevin Meyerhoff with the training, equipment, and information necessary to repair truck tires safely. This tracks an argument previously presented by Michelin in its motion for summary judgment. Michelin contended that John Fischer, as Kevin Meyerhoff's employer, had an absolute *legal* duty under certain Occupational Safety and Health Administration (OSHA) regulations—specifically, 29 C.F.R. § 1910.-177—to provide tire safety equipment and training to Meyerhoff and therefore, by virtue of K.S.A. 60–3305, Michelin had no duty to warn Meyerhoff in the present case. (Doc. 135, pp. 15–22).

The court rejected Michelin's argument. The court was unwilling to find, at the summary judgment stage, that Michelin's duty was obviated as a simple matter of law. (Doc. 135, p. 22 n. 7). The court found that material issues of fact remained as to whether Michelin's duty to warn extended to Meyerhoff and, as stated *supra*, submitted that question, along with pertinent instructions, to the jury. The jury assigned Mr. Fischer

sixty-five percent of the fault, more than to anyone else, but did not find that Fischer's duty as Meyerhoff's employer completely absolved Michelin or that Michelin had otherwise fully discharged its duty to warn Meyerhoff.[11] The court is satisfied with the jury's finding, and rejects Michelin's Rule 50 motion on this issue. Michelin's Rule 50 motion does not present any grounds for judgment as a matter of law in this regard that were not already considered in connection with the motion for summary judgment, and the court finds it unnecessary to rehash the bases for its decision on that matter.

II. *No Reasonable Jury Could Have Found Michelin At Fault*

■ Finally, Michelin contends that its Rule 50 motion should be granted because there was no legally sufficient basis for a reasonable jury to have found Michelin at fault. According to Michelin, plaintiffs produced no evidence that it *could* have placed an adequate warning on the sidewall of the truck tire that exploded and killed Kevin Meyerhoff or that its failure to place a warning on the sidewall of the truck tire caused or contributed to Kevin Meyerhoff's injuries.

With respect to sidewall warnings, plaintiffs' theory of recovery was that the following warning should have been placed on the Michelin truck tire's sidewall in yellow or some other contrasting color:[12]

**WARNING * TIRE MAY EXPLODE WHEN REINFLATED CAUSING SERIOUS INJURY OR DEATH *—DO NOT REINFLATE AFTER RUNNING UNDERINFLATED—TAKE THE TIRE TO A MICHELIN DEALER FOR REPAIR**

At trial, plaintiffs' yellow warning theory quickly unraveled.

Plaintiffs first called Mr. Forney to testify about the *feasibility* of placing warnings on a truck tire's sidewall. (Doc. 157, pp. 15–16,

---

**11.** At trial, John Fischer himself testified, and there was considerable evidence that Mr. Fischer had negligently failed to provide appropriate tire

safety equipment and instructions to Kevin Meyerhoff.

**12.** The proposed warning was formulated by Mr.

105–44).[13] Mr. Forney, who had worked in the tire industry, was unable to give any testimony that it would have been feasible for Michelin to place a *yellow* or other contrasting colored warning on its truck tire, particularly a warning with lettering in the size proposed by plaintiffs. (*Id.* at 121–141).[14] The jury was accordingly instructed that, although they could consider the wording of plaintiffs' proposed warning, any evidence concerning the color of the warning—that is, a color other than black—was to be disregarded.[15]

Plaintiffs then called Mr. Wells to testify about the *adequacy* of truck tire sidewall warnings. Mr. Wells, who had never worked in the tire industry, testified that the best way to convey a warning is to "put it on the product" itself. (Doc. 156, p. 47). He testified about the warnings other manufacturers placed on the sidewalls of their tires, (*id.* at 70–78, 80–82), and answered questions concerning the proposed warning that he himself had formulated, (*id.* at 79–80). With respect to the Goodyear tire that had been admitted into evidence, Mr. Wells opined that its sidewall warning was "too small," that "it should be in color," and that it did not sufficiently describe the hazards and potential injuries associated with a truck tire nor provide appropriate instructions. (*Id.* at 77). He did state, however, that the Goodyear warning was "definitely better than nothing."

Michelin's counsel vigorously objected to Mr. Wells's "better than nothing" testimony:

> My objection specifically, Your Honor, is that the legal test is not whether you can do something that's better than doing nothing; but the legal test is whether you're giving reasonably adequate warning under our statute. And to ask this witness

whether this particular warning is better than doing nothing opens up just unlimited possibilities as to what the duty of a manufacturer [is] to be. Does a manufacturer have to do everything that's better than nothing? That's in a sense my objection.

(*Id.* at 77–78). The court overruled the objection. (*Id.* at 78).

Michelin's counsel conducted a thorough cross-examination of Mr. Wells and elicited several admissions that substantially undermined plaintiffs' case.

First, Mr. Wells admitted that, in his opinion, every warning he had observed on other manufacturer's tires—truck tires, passenger tires, farm tractor tires, and others—was inadequate. (*Id.* at 159–70). Hence, according to plaintiffs' own expert, there were no adequate tire sidewall warnings in use at the time the Michelin truck tire was sold.

Second, Mr. Wells admitted that there were many dangers associated with truck tires which the language in his proposed warning failed to mention: "overloading," "using ether to seat a [tire] bead," "damaged beads," and a "host of of other risks or hazards." (*Id.* at 153–55, 171–72). He conceded that emphasizing one danger instead of another could be misleading. (*Id.* at 155–56). Mr. Wells indicated that, in his opinion, some warnings were more important than others, and that he would place those particular warnings on the tire's sidewall. (*Id.* at 182–84). However, Mr. Wells never identified those particular warnings.

Third, Mr. Wells was asked about an experiment he had conducted to evaluate the effectiveness of his proposed *yellow* warning:

---

Wells. (Doc. 156, pp. 79–80).

**13.** Mr. Forney's testimony on the *adequacy* of warnings was limited to Michelin's literature. (Doc. 157, pp. 15, 30–32, 144–50). Mr. Forney also testified about the nature of the particular truck tire hazard at issue in this case. (*Id.* at 84–104).

**14.** The fact that Michelin could have given a black-on-black sidewall warning was never in dispute. A Goodyear truck tire with a raised black-letter warning on it was entered into evidence, and Mr. Forney specifically stated that it

would have been feasible for Michelin to have placed plaintiffs' proposed warning on the sidewall of its truck tire in raised black letters. (*Id.* at 143–44).

**15.** This instruction was actually given during Mr. Wells's testimony, after plaintiffs' counsel had made a vain attempt to admit evidence concerning the color of the warning through him. (Doc. 156, p. 208). Mr. Wells simply did not know whether contrasting colored warnings could be placed on a tire during the tire manufacturing process. (*Id.* at 174–78).

Q. [By Mr. Hite] Now, let's talk a little bit about the procedure that you went through after you placed this yellow warning on this sidewall of this tire. You wanted to see whether it was adequate and effective, did you not?

A. I did.

Q. So you devised a test of your own to see whether this warning would be adequate, in effect.

A. That's right.

. . . .

Q. And with the help of your assistants— of your assistant, you took the tire, this exact tire with this yellow warning, to three tire shops in Hutchinson; correct?

A. Yes.

Q. And you had made arrangements with the service manager at each of those places to bring this Michelin tire in with a wheel and ask somebody that did not know this was a test to mount it.

A. That's right.

Q. So that nobody would know what was going on; correct?

A. That's correct.

Q. And you devised a form list of questions to ask those people after they had mounted the tire but before they had started to inflate it; correct? Or as they were starting to inflate it?

A. Right. We stopped them at that point.

Q. As they started to inflate, you would stop them?

A. Correct.

(Doc. 156, pp. 184–85). According to Mr. Wells's testimony, each of the three tire repairmen questioned pursuant to this method were unable to answer simple questions about the meaning of the yellow warning on the tire. (*Id.* at 186–92). Two of the tire repairmen did not know what the tire warning said; another gave an incorrect response. (*Id.* at 192). Mr. Wells testified that he and plaintiffs' counsel decided to terminate the testing because, in their estimation, it had not been "productive." (*Id.* at 193).[16]

During redirect, Mr. Wells listed some ways that a tire manufacturer could make a sidewall warning effective even if the warning had to be black in color: "shadowing," "having a different type of a letter that will definitely stand out versus a straight letter," and using larger letters. (*Id.* at 203–04). However, he never stated that those methods would be adequate. Mr. Wells also opined that only the "hidden dangers," not all dangers associated with a truck tire, need to be addressed in a tire sidewall warning. (*Id.* at 209–10). Once again, however, he did not specifically list what dangers were hidden and what dangers were not—what dangers needed to be addressed in a sidewall warning, and what dangers did not.

The question the court must now ask is whether, accepting plaintiffs' experts' opinions concerning sidewall warnings as true, a reasonable jury could have found (1) that Michelin *could* have place an *adequate* warning on the sidewall of its truck, and (2) that Michelin's failure to do so caused or contributed to Kevin Meyerhoff's injuries. There must have been evidence sufficient to support *both* findings in order for the verdict to stand.

■■■ With respect to causation, plaintiffs' experts' testimony clearly weakened plaintiffs' case and provided little support for the jury's finding. However, there was testimony from fact witnesses—Kevin Meyerhoff's brother and some of his former employers—that Kevin Meyerhoff was a careful and conscientious worker. The jury was instructed, in accordance with Kansas law, that "there is a presumption that an adequate warning will be read and heeded" and a "presumption that [an] inadequate warning caused the injuries." (Doc. 145, Inst. 6). *See Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 388, 681 P.2d 1038 (1984). Once the jury found that Michelin *could* and *should* have placed an adequate warning on its tire, this presumption favored plaintiffs. Through its own witnesses and cross-examination of plaintiffs' witnesses, Michelin set forth substantial evidence to

---

16. The jury also heard testimony from fact witnesses experienced in tire repair who stated un-

equivocally that they never read the sidewalls of tires. (Doc. 142, pp. 142, 157, & 272–72).

overcome the presumption. However, the jury was apparently not persuaded. Causation is a particularly fact-intensive issue, a question uniquely within the jury's province. Their determination in this regard must stand inviolate.

However, with respect to whether Michelin *could* have placed an *adequate* warning on the sidewall of its truck tire, this court perceives no reasonable basis for the jury's finding of fault. Mr. Wells was the only expert to testify for plaintiffs on the adequacy of sidewall warnings. He rejected existing sidewall warnings as inadequate because they were too small, not in a contrasting color, and did not sufficiently address tire dangers or provide appropriate tire safety instructions. (Doc. 156, pp. 76–77, 159–70). Mr. Wells offered a warning of his own that was larger, in a contrasting color, and specifically addressed the danger associated with Kevin Meyerhoff's accident. This warning, however, did not stand up to Mr. Wells own test for adequacy.

First, because Mr. Forney was unable to establish the feasibility of placing a colored warning on a truck tire, Mr. Wells's proposed warning was reduced to black-on-black. He was never asked whether such a warning would be adequate; he was never asked whether such a warning would be effective. His testimony with respect to other manufacturers' warnings, however, seemed to indicate that he believed black-lettered warnings were not adequate.

Second, Mr. Wells conceded that the language in his proposed warning did not address many of the dangers associated with servicing truck tires. He rejected other manufacturers' warnings on this basis. He attempted to explain away the deficiencies in his warning by stating that only the important, hidden dangers need to be included in a warning. But Mr. Wells never stated what those dangers were. In short, he never offered any testimony that a warning sufficiently addressing all of those dangers and prescribing instructions relating to those dangers *could* be crafted, placed on a truck tire's sidewall, and still be effective.

■ In this court's view, a person cannot, after suffering an accident, simply draw up a warning limited to the dangers involved in that accident and argue that that warning *should* have been conveyed by the manufacturer or seller without first also establishing that that warning is adequate and that it actually *could* have been communicated in the manner proposed. In *Garst v. General Motors Corp.*, 207 Kan. 2, 20, 484 P.2d 47 (1971), the Kansas Supreme Court relied on a quote from 42 Wash.L.Rev. 601:

> "To prove defective design, it is insufficient merely to assert that a different design would have alleviated or averted the plaintiff's injuries, since it may be assumed that any particular accident involving man and machine might have been avoided through a variation in the design of the machine. However, such a variation might greatly magnify the chances of other sorts of mishaps taking place...."

■ Similarly, in a warning case, a plaintiff must do more than simply present an expert who espouses a new or different warning. He must establish that warning's feasibility, adequacy, and effectiveness. In this case, plaintiffs' experts' testimony fell woefully short of meeting this criteria. The Supreme Court stated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, ——, 113 S.Ct. 2786, 2793, 125 L.Ed.2d 469 (1993):

> The subject of the experts' testimony must be 'scientific ... knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation.

Even when viewed in the light most favorable to plaintiffs, the testimony of plaintiffs' experts with respect to sidewall warnings, particularly the testimony of Mr. Wells, was largely unsupported speculation. Mr. Wells's opinions regarding sidewall warnings lacked the underpinnings of "scientific validity" demanded by *Daubert*. To the extent *Daubert* standards were applied by Mr. Wells in his warning label experiment, the results revealed that his opinion lacked scientific validity.

At best, plaintiffs' experts could only state that a raised black-lettered sidewall warning could have been used and that such a warning would have been "better than nothing." (Doc. 157, p. 162; Doc. 156, p. 78). "Better than nothing" is not the applicable standard.[17] The standard, instead, is what a reasonably prudent manufacturer would have done. *Garst*, 207 Kan. at 21, 484 P.2d 47. Plaintiffs' experts never focused in on this standard; they never actually testified that a reasonably prudent manufacturer would have placed a black-lettered warning like the one proposed on its tires. Michelin, by contrast, submitted clear evidence that its decision not to place a warning on its truck tire's sidewall was reasonable and prudent. In short, plaintiffs simply never met their burden of proof on the issue of adequate warning.

**IT IS ACCORDINGLY ORDERED** that defendant Michelin's renewal of its motion for judgment after trial (Doc. 153) is hereby granted. Plaintiffs' motion for a new trial (Doc. 151) is denied.

---

**17.** The court regrets that it did not sustain Michelin's counsel's objection to the "better than nothing" testimony when it was made. It should be noted that Michelin did not concede that sidewall warnings are "better than nothing." Michelin argued that sidewall warnings are not effective and that because the space on a tire's sidewall is limited, sidewall warnings cannot be as thorough as is necessary, are misleading, and can do more harm than good.