**Mary KINSER, individually, and as heir at law and personal representative of the Estate of Tim Kinser, deceased, Plaintiff,**

v.

**GEHL COMPANY, Defendant.**

No. CIV. A. 96–2361–EEO.

United States District Court,
D. Kansas.

Dec. 22, 1997.

Kenneth J. Eland, Sloan & Eland, Hoxie, KS, Daniel F. Church, Joseph W. Hemberger, Bryon Atlee ·Bowles, Mcanany, Van Cleave & Phillips, P.A., Kansas City, KS, for Plaintiff.

E. Wayne Taff, Steven F. Coronado, Sherman, Taff & Bangert, P.C., Kansas City, MO, for Defendant.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, Senior District Judge.

. This matter is before the court on the motions of defendant Gehl Company ("Gehl") for summary judgment (Doc. # 42) and for a *Daubert* hearing (Doc. # 88). Plaintiff has responded and opposes the motion for summary judgment. Defendant has filed a reply, and the motion is ready for ruling. Defendant also requests oral argument on the summary judgment motion (Doc. # 52). For the reasons stated below, the motion for summary judgment is denied. Defendant's request for oral argument is denied.[1] Defendant's request for a *Daubert* hearing is also denied.

This products liability case arises out of a farming accident, where plaintiff's husband, Tim Kinser, became entangled in a round baler manufactured by defendant (Model 1870), and subsequently died. Plaintiff has filed suit, alleging that the baler was defectively designed, and asserting the defendant should be liable under theories of negligence, strict liability, and breach of implied warranty. Defendant contends it is entitled to summary judgment because there are no genuine issues of material fact that the baler was defectively designed.

I. *Standards for Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any

---

1. The court, in its discretion, has determined that oral argument would not materially assist the court in its resolution of the issues.

genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on her pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

## II. *Discussion*

Gehl contends that it is entitled to summary judgment because (1) plaintiff's experts do not survive a *Daubert* analysis; (2) there is no evidence of available and feasible design alternatives; and (3) there is no evidence to show causation. The court will address each of these arguments in turn.

Gehl first maintains that the opinions of plaintiff's two engineering experts, William Kennedy and Jerry Purswell, fail the *Daubert* criteria for the admissibility of expert testimony. Plaintiff states that Daubert is inapplicable, inasmuch as their experts' opinions are not based on any scientific methodology, but instead are based on their extensive engineering experience.

■ In *Compton v. Subaru of America, Inc.,* 82 F.3d 1513 (10th Cir.1996), the Tenth Circuit identified two possible analyses applicable to a proffer of expert testimony: (1) the traditional inquiry under Rule 702, and (2) a further *Daubert* inquiry applicable to scientific testimony purportedly based on some scientific methodology. *Compton,* 82 F.3d at 1519. The Tenth Circuit explained that a trial court should consider the additional factors set out in *Daubert* only if an expert witness offers testimony based upon a particular methodology or technique:

> The language in *Daubert* makes clear the factors outlined by the [Supreme] Court are applicable only when a proffered expert relies on some principle or methodology. In other words, application of the Daubert factors is unwarranted in cases where expert testimony is based solely upon experience or training.

*Id.* at 1518. Since *Daubert,* the Tenth Circuit has continued to apply a traditional Rule 702 analysis to expert testimony not based on scientific methodology or technique. *See, e.g., United States v. Markum,* 4 F.3d 891, 895–96 (10th Cir.1993) (fire chief's testimony based upon personal observations and the observations of fellow firefighters admissible under Rule 702); *United States v. Muldrow,* 19 F.3d 1332, 1338 (10th Cir.1994) (court

applied conventional Rule 702 approach to affirm Judge Van Bebber's admission of expert testimony by a police officer with specialized knowledge of drug trafficking).

■ Plaintiff represents that Kennedy and Purswell qualify as experts under Rule 702 because, as in *Compton,* they "reached [their] expert conclusions by drawing upon general engineering principles and [their] years of experience as ... engineer[s]." Plaintiff's Brief at 29. Based upon the representations of plaintiffs, the court finds that the testimony and opinions of Kennedy and Purswell are based solely on engineering background and experience, and not upon a particular methodology or technique. Accordingly, we find that the *Daubert* analysis is not implicated here, and that only a traditional admissibility inquiry under Rule 702 should be employed. Thus, no *Daubert* hearing is necessary. The court finds, based upon the present showing, that plaintiff's experts' proposed testimony satisfies the traditional Rule 702 inquiry. Defendants' arguments to exclude their testimony go to the weight and not to the admissibility of the testimony.

■ Gehl next argues that it is entitled to summary judgment on plaintiff's product liability claim for defective design because there is no evidence that alternative designs were available and feasible. The duty of a manufacturer in designing a product is set forth in the Pattern Instructions Kansas 3d as follows:

> A manufacturer of a product has a duty to use ordinary care in the design of the product so that it will be reasonably safe for the use for which it is intended or which can reasonably be anticipated.

PIK-Civil 3d 128.02. In *Garst v. General Motors Corporation,* 207 Kan. 2, 484 P.2d 47 (1971), the Kansas Supreme Court held that in products liability cases, where a manufacturer is charged with negligence in design of his product, the determination as to whether the manufacturer has in fact exercised due care in design requires consideration of several factors. *Garst,* 207 Kan. at 21, 484 P.2d at 61. One of the "most significant" factors is whether others in the field are using the same design, or a safer design. *Id.*

■ Viewing the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, the court finds that whether this product was "defective" at the time of manufacture is a question of fact for the jury. Plaintiff has presented evidence that at the time Gehl produced the Model 1870, Gehl's competitors were designing balers with safety features.[2] Thus, plaintiff has produced sufficient evidence that design alternatives were available and feasible to preclude summary judgment on this issue.

■ Gehl next argues that summary judgment is proper because plaintiff is unable to prove causation. Specifically, defendant asserts that there is no evidence that the alleged defect in the baler caused the death of plaintiff's husband. Defendant states:

> Due to the lack of information regarding what Tim Kinser was doing immediately before and how he came to be entangled in the baler, plaintiff's experts cannot know whether any of their design concepts would have prevented decedent Tim Kinser from being entangled in the baler.

Defendant's Brief at 11.

The court finds that defendant's challenge of the testimony of plaintiff's experts is simply one aimed at their credibility and, as such, is an attack more properly made before the jury. *See Hudson v. Townsend Associates, Inc.,* 704 F.Supp. 207, 212 (D.Kan.1988) ("[D]efendant contends that plaintiffs' strict liability claims should fail because they have not presented competent evidence to establish causation. However, plaintiffs' expert

---

**2.** Plaintiff, in responding to the motion for summary judgment, attached as exhibits the affidavits of her two experts, supplementing their original expert reports. Defendant, in its summary judgment reply, objects to the court's consideration of these affidavits on various grounds, including untimeliness and that the opinions exceed the scope of the original expert reports. This issue, as currently postured, is not squarely before the court. The court deems it unnecessary to make any ruling on the admissibility of these affidavits at this time, because it finds that, for purposes of ruling on the motion for summary judgment, plaintiff has presented other evidence sufficient to create a question of fact on whether design alternatives were available and feasible. *See* Plaintiff's Exhibit 13, deposition testimony of Donald E. Burroughs at 107–08.

specifically stated at his deposition, and later in an affidavit, that the inadequate design of the tower caused its collapse. Defendant's attack is again simply one aimed at the credibility of plaintiff's expert. Such an attack is more properly made before a jury, and defendant's motion for summary judgment on the strict liability claim will be denied.")

Regardless of the foregoing, the court observes "the general trend in the law is that plaintiffs may prove product defect through circumstantial evidence." *Taylor v. Cooper Tire and Rubber Co.*, No. 96–4084, 1997 WL 755274, at *2 (10th Cir. Dec.5, 1997). In *Taylor*, the court, in applying Utah law, held that to recover for a manufacturing defect, expert testimony was not necessary to prove the element of product defect. *Id.* The court also recognized that in other jurisdictions, "circumstantial evidence, whether expert or not, may support a manufacturing defect claim." *Id.* at *3 (citing cases from other jurisdictions recognizing this principle, including *Orth v. Emerson Electric Company*, 980 F.2d 632, 636 (10th Cir.1992) (interpreting Kansas law)). The court finds plaintiff has produced sufficient circumstantial evidence of product defect to present the issue of causation to a jury.

Additionally, the court notes that Kansas courts have repeatedly held "the question of causation in a product liability case is one for resolution by the jury in the absence of conclusive proof that makes only one result possible." *Sell v. Bertsch and Company, Inc.*, 577 F.Supp. 1393, 1397 (D.Kan.1984) (citing *Palmer v. Ford Motor Company*, 498 F.2d 952 (10th Cir.1974); *see also Meyerhoff v. Michelin Tire Corporation*, 852 F.Supp. 933, 947 (D.Kan.1994).) The court finds, based on the submissions of the parties, that there is an "absence of conclusive proof that makes only one result possible;" accordingly, the issue of causation must be decided by the trier of fact.

IT IS THEREFORE ORDERED that defendant Gehl's motion for summary judgment (Doc. # 42) is denied.

IT IS FURTHER ORDERED that defendant Gehl's request for oral argument (Doc. # 52) is denied.

IT IS FURTHER ORDERED that defendant Gehl's request for a *Daubert* hearing (Doc. # 88) is denied as moot, in light of our ruling on the issue in defendant's motion for summary judgment.